Jeffrey S. Kravitz, SBN 66481
jskravitz@foxrothschild.com
Patrick J. Hagan, SBN 266237
phagan@foxrothschild.com
Margo J. Arnold, SBN 278288
marnold@foxrothschild.com
FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA   90067
Tel:  310-598-4150
Fax: 310-556-9828


Attorneys for Defendants
Screen Actors Guild-Producers Pension Plan and
Board of Trustees Screen Actors Guild-Producers
Pension Plan

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE HOFFMAN,<br><br>              Plaintiff,<br><br>        vs.<br><br>SCREEN ACTORS GUILD-<br>PRODUCERS PENSION PLAN, an<br>ERISA plan; BOARD OF TRUSTEES<br>SCREEN ACTORS GUILD-<br>PRODUCERS PENSION PLAN, a plan<br>administrator; DOES 1 through 10,<br><br>              Defendants. | Case No.: 2:16-cv-01530-R-AJW<br><br>**FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW** |

1         Leslie Hoffman ("Plaintiff") filed this action for benefits pursuant to the

2 Employment Retirement Security Act of 1947 ("ERISA"), 29, U.S.C. §§ 1001 et seq.,

3 against the Screen Actors Guild - Producers Pension Plan (the "Pension Plan") and

4 Screen Actors Guild - Producers Pension Plan and Board of Trustees ("Board of

5 Trustees," and collectively, with the Pension Plan, "Defendants"). Defendants filed a

6 Motion for Summary Judgment on September 19, 2016, which the Court granted on

7 October 12, 2016. Having reviewed the administrative record, other evidence

8 properly before the Court, and the parties' respective arguments, the Court enters the

9 following Findings of Fact and Conclusions of Law.

10 **I.**     **FINDINGS OF FACT**

11        1.      Defendants manage a defined benefit pension plan subject to ERISA.

12 Declaration of Jeffrey S. Kravitz ("Kravitz Decl."), Ex. D [Declaration of Amanda

13 Bernard ("2012 Bernard Decl.") ¶ 5, SAG00497].

14        2.      Pension Plan is administered by the Board of Trustees, and according to

15 the Trust Agreements and plan rules, the Pension Plan *expressly* gives the Board of

16 Trustees and the Benefits Appeal Committee the power to "interpret the Plans" and

17 the power to "construe doubtful or ambiguous provisions of the Plans." 2012 Bernard

18 Decl. ¶¶ 5, 6, SAG000404-406, SAG000496.

19        3.      The plain language of the Pension Plan requires a "totally disabled"

20 individual to be "unable to engage in any substantial gainful activity by reason of any

21 medically determinable physical or mental impairment which can be expected to

22 result in death or to continue for the individual's lifetime." 2012 Bernard Decl. ¶ 5,

23 SAG000514.

24        4.      Defendants are not Plaintiff's employers. 2012 Bernard Decl. ¶ 3.

25        5.      The amount of money placed into the pertinent pension fund is not within

26 Defendants' control. That decision is collectively bargained for by Plaintiff's

27 employers and SAG-AFTRA, Plaintiff's labor union. 2012 Bernard Decl. ¶ 6,

28 SAG000401.

6.     The Board of Trustees does not charge Plaintiff's employers a fee to account for the cost of claims payouts.  2012 Bernard Decl. ¶¶ 6, 8, SAG000401, SAG000431.

7.     Defendants had been paying Plaintiff, a 61 year-old retired stunt woman, a monthly disability pension since 2004, when Plaintiff claimed to be totally disabled and unable to work due to severe depression.  Kravitz Decl., Ex. D [Bernard Decl. ¶¶ 12, 24; SAG00032-33; SAG00052-53; SAG00126-129; SAG00141]; Kravitz Decl. , Exh. E [Shakman Decl. ¶ 3].

8.     Plaintiff collected disability pension payments from Defendants for nearly ten years.  Kravitz Decl., Exh. D [Bernard Decl. ¶ 10; SAG00037; SAG00052-53]; Kravitz Decl., Exh. E [Shakman Decl. ¶ 3]

9.     In 2008, Plaintiff asked Defendants to convert her disability pension to an occupational disability pension, which required Plaintiff to demonstrate that her claimed disability, "severe major depression," occurred in the course of her employment.  Kravitz Decl., Ex. D [Bernard Decl. ¶ 28, SAG-00283-284].

10.     In response to Plaintiff's request, Defendants' medical director, Dr. Robert Shakman, conducted a review of Plaintiff's medical records.  He determined that Plaintiff was unable to demonstrate that her alleged depression occurred in the course of the employment, and her request was denied.  Kravitz Decl., Exh. E [Shakman Decl. ¶ 4, SAG00057]; Kravitz Decl., Exh. D. [Bernard Decl. 29, SAG000352].

11.     Plaintiff then filed an Employee Retirement Income Security Act of 1974 ("ERISA") action against the Plan on September 16, 2010 for denial of benefits. Kravitz Decl. ¶ 2.

12.     On May 3, 2012, this Court granted the Plan's motion for summary judgment on Plaintiff's claim, and Plaintiff appealed.  Kravitz Decl. ¶¶ 8, 9.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

13.     On appeal, the Ninth Circuit reversed, with instructions to this Court to remand the matter to the Plan to obtain a second medical opinion of Plaintiff's claims in order to provide Plaintiff with a full and fair review.  Kravitz Decl., ¶ 10.

14.     In accordance with the Ninth Circuit's instructions, the Plan's Benefits Appeal Committee submitted Plaintiff's appeal file to two independent medical consultants for review by six different board certified specialists, five of whom found that Plaintiff had *never* been "totally disabled" as defined by the Plan.  Declaration of Amanda Bernard ("2016 Bernard Decl.") ¶ 3, 7, SAGPPP000384-406, SAGPPP000538-539.

15.     The five independently concurring specialists determined that Plaintiff "could work in any generalized capacity from an orthopedic perspective" and that "in totality of all the medical evidence presented, there is no support for the fact that [Plaintiff] has a psychological condition that is functionally impairing."  The sixth specialist found that Plaintiff was totally disabled beginning in September 2012, but that she had "no physical neurological restrictions or deficits" and "would be able to work in any position that did not require [Plaintiff] to engage in rapid word reading or other speed processing" and that "there are no mentation restrictions as it pertains to [Plaintiff's] capacity to work."  2016 Bernard Decl. ¶ 3, 5, SAGPPP000256-259, SAGPPP000265-283, SAGPPP000373-406; SAGPPP000514-515, SAGPPP000540-544.

16.     During this administrative review process, the Committee learned that Plaintiff was holding herself out as available to work, and that she did in fact work as a stunt coordinator during the term of her claimed disability, suggesting that although Plaintiff may have recovered from her depression sufficiently enough to work beginning in 2004, she intentionally continued to collect a disability pension while misrepresenting her ability to work.  Kravitz Decl. ¶¶ 11-19, SAGPPP000388-398, 2016 Bernard Decl. ¶ 3.

17.     Plaintiff's online profiles on LinkedIn.com, IMDb.com, and her personal website "The Official Leslie Hoffman Site" (www.stuntrek.com/leslie.html) listed stunt and acting credits ranging from 2004 through 2010, and advertised Plaintiff's services as a stunt coordinator.  For instance, Plaintiff's website as it appeared on July 12, 2014 contained an announcement promoting Plaintiff's attendance at the London Film and Comic Convention in 2010 stating "LESLIE IS NOW COORDINATING STUNTS FOR STARSHIP FARRAGUT FAN SERIES."  Kravitz Decl. ¶¶ 11-19, SAGPPP000388-398.

18.     Another example is Plaintiff's Linkedin.com profile as it appeared on July 11, 2014, which listed a recommendation from client, Thomas, Dahl stating:

> Leslie Hoffman is hired as a stuntwoman, a stunt coordinator/advisor and an actress in the largest MTC production to date, and although the project has just started, I'd very much like to point out what a joy she is to work with.

Kravitz Decl. ¶¶ 11-19, SAGPPP000388-398.

19.     After Defendants brought this to the Court's attention in a supplemental pleading, Plaintiff removed the incriminating posts from her online profiles.  Kravitz Decl. ¶¶ 20, 21.

20.     In March 2016, after a full and fair review of Plaintiff's updated appeal file, including the new independent medical opinions finding that Plaintiff was not totally disabled, the Committee voted to deny Plaintiff's appeal and terminate her disability pension, producing a three-page letter explaining its reasoning for denying benefits to Plaintiff.  2016 Bernard Decl. ¶ 9, 10, SAGPPP000545-551.

21.     Plaintiff filed this ERISA action against Defendants on March 4, 2016.  Kravitz Decl. ¶ 23.

## II.   CONCLUSIONS OF LAW

22.     Any Finding of Fact deemed to be a Conclusion of Law is hereby incorporated into these Conclusions of Law.

23.     Under ERISA § 502, a beneficiary of plan participant may sue in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.  29 U.S.C. § 1132(a)(1)(B); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 210, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004).

24.     Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  To meet its burden of production, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense to show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

25.     Once the moving party meets its initial burden of showing there is no genuine issue of material fact, the opposing party has the burden of producing competent evidence and cannot rely on mere allegations or denials in the pleadings. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  *Id.*

26.     The first question for a court in an ERISA denial of benefits case is to determine is the standard with which to review the plan administrator's decision.  The general standard is *de novo*, however if the plan gives the plan administrator discretionary authority to determine eligibility for benefits the standard of review of for abuse of discretion.  *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008).  If the abuse of discretion standard applies, a court may weigh a conflict of interest in order to apply a heightened abuse of discretion review.  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006).

27.     There are two types of conflicts a court should weigh.  A structural conflict of interest exists if an insurer of employer is both the plan administrator and

the funding source for benefits.  *Abatie*, 458 F.3d at 965-66.  A procedural conflict of interest exists if a procedural violation occurred in the processing of an ERISA claim. *Id.* at 971-72.  Either type of conflict must be weighed in an abuse of discretion review to heighten the skepticism with which a court reviews the denial of benefits. However, a procedural violation should not alter the level of review significantly when "an administrator can show that it has engaged in 'an ongoing, good faith exchange of information between the administrator and claimant[.]'"  *Id.* at 972.

28.     "Where the abuse of discretion standard applies in an ERISA denial of benefits case, 'a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.'"  *Day. v. AT&T Disability Income Plan*, 733 F. Supp. 2d 1109, 1112 (N.D. Cal. 2010) (citations omitted).  However, when a court considers evidence outside the administrative record in determining the existence of bias on the part of the plan administrator, the traditional tests of summary judgment do not apply.  *Nolan v. Heald College*, 551 F.3d 1148, 1155 (9th Cir. 2009).

29.     Defendants claim that the plan administrator's decision to deny Plaintiff's disability benefits should be reviewed under an abuse of discretion standard.  Plaintiff does not dispute that an abuse of discretion review is appropriate. The Plan here is administered by the Board of Trustees.  The Board of Trustees and the Benefits Appeal Committee have the power to interpret the plan and "construe doubtful or ambiguous provisions of the plan."  Therefore, because the plan administrator has discretionary authority to determine eligibility, an abuse of discretion standard applies.

30.     Plaintiff and Defendants disagree, however, as to the level of skepticism which should accompany the abuse of discretion review.  Plaintiff argues that various alleged procedural defects in the denial of benefits are indicative of a "procedural conflict."  Defendants, on the other hand, argue that any procedural defects were

minor issues and did not affect the decision to deny benefits to Plaintiff.

31.     While the ordinary rules of summary judgment do not apply to a decision by a district court based on the administrative record, the same is not true when evaluating the evidence of bias outside the administrative record. *Nolan*, 511 F.3d at 1154.  Therefore, in considering the evidence outside the administrative record to deduce evidence of a procedural conflict, this Court interprets all evidence in the light most favorable to Plaintiff.  As such, there is sufficient evidence of procedural conflicts to merit a heightened abuse of discretion review.

32.     Plaintiff's counsel hurls various insults at Defendants and their counsel which are unconvincing and inappropriate.  However, claims of a failure to disclose the administrative record to Plaintiff during the course of the appeal are indicative of procedural defects.  On the other hand, Plaintiff has not shown that the procedural defects are accompanied by "malice, []self dealing, or [] a parsimonious claims-granting history." *Abatie*, 458 F.3d at 970.  Therefore, this Court's level of skepticism is not extremely high in reviewing the denial of benefits.

33.     Upon review of the record for an abuse of discretion with a heightened level of skepticism, it is apparent that Defendants' decision to deny benefits was neither arbitrary nor capricious and was based on reasonable evidence against the Plaintiff.

34.     An administrator does not abuse its discretion if its decision to deny benefits is reasonable. *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 675 (9th Cir. 2011).  A court "may not merely substitute [its] view for that of the fact finder" when reviewing for an abuse of discretion.  *Id.* at 676.  On the other hand, an "administrator abuses its discretion if it renders decisions without any explanation, construes provisions of the plan in a way that conflicts with the plain language of the plan, or relies on clearly erroneous findings of fact in making the benefit determinations." *Day*, 733 F. Supp. 2d at 1114.  Here, the Benefits Appeals Committee's decision to deny benefits was reasonable and not based on any clearly

erroneous findings of fact.

35.    The Benefits Appeals Committee produced a three-page letter explaining its reasoning for denying benefits to Plaintiff.  The Plan requires Plaintiff to be "totally disabled" in order to receive benefits.  The Board of Trustees interpreted the term "totally disabled" in the same manner as it is defined in the Plan.  Plaintiff does not argue that the Defendants rendered a decision without an explanation or construed a provision of the plan in direct conflict with the plain language of the plan.  The only contention is whether Defendants relied on clearly erroneous findings of fact.

36.    The Committee relied on the medical reports of a total of six medical professionals of various disciplines from two medical review companies.  Three professionals reviewed Plaintiff's medical records during the initial denial of benefits, and three separate, unrelated professionals reviewed Plaintiff's medical records following an appeal of the initial denial.  Of all six reviewing medical professionals, only one indicated that Plaintiff may have been totally disabled under the terms of the Plan.  The one medical professional's finding that Plaintiff was totally disabled was contradictory to other statements in the professional's report.  The Committee accepted documentation from Plaintiff and engaged in a meaningful review of the record on appeal and in its initial denial of benefits.  The Committee also relied on Plaintiff's various internet profiles indicating that she had been employed in movies and shows as a stunt coordinator during the time she claimed to be totally disabled.

37.    Plaintiff's claims are unclear given her decision to respond to the Motion for Summary Judgment by simply incorporating earlier briefing and then leveling attacks on the Defense counsel.  However, at certain points of the record, Plaintiff disputes Defendants' characterization of the medical professionals' determinations.  The Court has reviewed the administrative record and is satisfied that at least five of the independent, unrelated medical professionals were of the opinion that Plaintiff was not totally disabled as defined by the Plan.  Merely claiming that the medical professionals "state an opinion that contradicts the objective evidence" is especially

8

FINDINGS OF FACT AND CONCLUSIONS OF LAW

unconvincing under an abuse of discretion review.

38.     Even given the level of skepticism with which this Court reviewed the Committee's decision to deny benefits, it is clear that the Committee rationally based its opinion on a thorough record and substantial evidence.  The Committee's denial was neither arbitrary nor capricious.  It was based on a reasonable interpretation of the Plan, the evidence presented, and was made in good faith.  Therefore, the Committee did not abuse its discretion and Defendants' Motion for Summary Judgment is granted.

39.     Defendants also moved for summary judgment as to Plaintiff's second claim for violation of ERISA § 502(c). As a preliminary matter, the Court recognizes that Plaintiff has raised numerous arguments as to violation of ERISA standards in its Opposition to Summary Judgment.  However, the only violation which was pleaded in the Complaint was a violation for failure to disclose documents under ERISA 502(c).  Therefore, Plaintiff's new claims raised in its Opposition to Motion for Summary Judgment are not considered.

40.     "In order to challenge a benefit plan's failure to comply with ERISA's disclosure requirements, the employees must 'have a colorable claim that (1) [they] will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.'" *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103, 117-18 (1989)).

41.     Here, given the Court's holding that the Committee did not abuse its discretion above, Plaintiff does not have a colorable claim that she will prevail in a suit for benefits.  Therefore, she has no standing to challenge the Committee's failure to comply with ERISA's disclosure requirements.

//

//

//

//

FINDINGS OF FACT AND CONCLUSIONS OF LAW

1       IT IS HEREBY ORDERED that, for the reasons articulated above,

2   Defendants' Motion for Summary Judgment is GRANTED.  A judgment shall be

3   entered in favor of Defendants on all claims consistent with these Findings of Fact

4   and Conclusions of Law.

5

6

7   Dated: November 2, 2016

8                                      Hon. Manuel L. Real

9                                      UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINDINGS OF FACT AND CONCLUSIONS OF LAW